## BAUER v. GOLDMAN.

Circuit Court, Dade County.

December 9, 1952.

Herbert U. Feibelman, L. L. Robinson, and Evans, Mershon, Sawyer, Johnston & Simmons, all of Miami, for plaintiff.

David Lemelman and Wyatt Johnson of Hoffman, Kemper & Johnson, all of Miami, for defendant.

GEORGE E. HOLT, Circuit Judge.

On January 6, 1946, the defendant landlord leased to the plaintiff tenant premises known as the Triangle Market at 149 N. W. Fifth Street in Miami for occupancy as a general food market for a term of 10 years at a total rental of $27,000, payable as follows:

> $200 on the signing of this lease, and $200 on the first day of each and every month thereafter for a period of 5 years from the date of commencement of this lease; thereafter, $250 on the first day of each and every month until the termination of this lease.

> The tenant has further this day deposited with the landlord and the landlord acknowledges receipt of the sum of $500 as security for the faithful performance of the terms and conditions of this lease.

The lease was executed in pursuance of an agreement dated the same day to acquire the Triangle Market which was not signed by the defendant Tillie Goldman but by her husband Max who according to the undisputed testimony was her agent in all matters connected with the renting of the premises.

Paragraph 10 of the lease provides that if the tenant should abandon, vacate or remove the major portion of the merchandise usually kept on the premises and cease to do business therein—

> then and in such event, this lease shall immediately become cancelled and null and void, and all payments made by said lessee shall be retained by the lessor as payment in full for the period of time the premises are occupied by the lessee, and lessee shall not be entitled to any monies so paid by him, even though such payment is for time subsequent to such closing of the store and removal of the goods, wares and merchandise. Provided, however, that this section shall not apply where this lease or renewal or extension thereof extends for a period of time subsequent to _____ of the year following execution hereof.

Paragraph 24 provides that there shall be added to paragraph 10 the provision that—

> This clause shall not apply to any cessation of business, provided the tenant has complied with the terms and conditions of this lease and continues to so comply.

Paragraph 12 provides that if the premises should be destroyed by fire or be so damaged by fire or other elements as to be unfit for occupancy or use by the tenant, the lessor—

> shall have the option (1) to terminate this lease, (2) to repair and rebuild the said premises, remitting rents hereby reserved, or a fair and just proportion thereof, according to the damage sustained, until the said premises are reinstated and made fit for occupancy and use; and in the event the lessor elects to exercise the option to repair and rebuild, the same shall be done and completed within a reasonable time.

In paragraph 20 of the lease—

> the lessor further covenants that lessor will keep the exterior of the building, including amongst other things, the roof of the said building in which are situated the demised premises, in good repair, and the portion of building intended to be designated as the exterior shall exclude those portions hereinbefore covenanted and agreed by the lessee to be kept in repair, but the lessee shall give to the lessor 7 days written notice of needed repairs, and the lessor shall have a reasonable time thereafter to make them.

The apparent conflict in these provisions created doubt in the plaintiff's mind as to his rights under the lease and particularly as to whether he had the right to consider the lease terminated by a breach of the covenant by the landlord to—"keep the exterior of the building including, amongst other things, the roof of the said building . . . in good repair." To resolve such doubt plaintiff filed his complaint for a declaratory decree under chapter 87, Florida Statutes 1951.

The lease was entered into after an inspection of the premises, made about the time the lease was entered into. The tenant found the premises in tenantable condition, although he did find it necessary to paint the interior of the store.

The leased premises consist of a store which occupies a portion of the downstairs of a building located at the above address. The building is two stories high in front and one story high in the rear. The exterior of the leased premises consists of the walls on the four sides, the roof over the rear portion and an apartment on the second floor which extends out over the sidewalk in front of the store.

The roof, which is over the one-story rear portion of the premises in which the tenant had a cold storage room or large icebox, was employed by another tenant upstairs as a means of ingress to and egress from the apartment on the second floor and as a porch for a variety of domestic purposes and apparently on at least one occasion was littered with various articles, as empty crates and a washing machine. Such use of the roof was unwise and improper, and caused the roof over the leased premises to leak.

These leaks developed in the month of July, prior to July 24, of 1947, and water coming in spread over the store ceiling in different parts of the leased premises. The tenant's wife, Mrs. Max Bauer, who was her husband's agent in all matters pertaining to the leased premises and other matters and who signed all checks paid to the landlord for rent, wrote a letter to the landlord, then on vacation in New York state, reporting the need for repairs to the roof, as required by paragraph 20 of the lease.

It also appears that the leaks in the premises were reported to the landlord on a number of other occasions. The condition of the rear roof became so bad that the tenant had to repair it at substantial cost. Even after these repairs, however, the tenant's store premises, in the front as well as the rear portions, suffered leaks.

The tenant and his wife repeatedly asked the landlord to remedy the situation but the landlord did not terminate the lease, nor did

she make the necessary repairs. In short, she did practically nothing.

Recent pictures of the store premises, admitted into evidence, showed serious damage to the ceiling and walls of the premises which prevented occupancy and use thereof by the tenant.

Certain it is that the defendant in this cause has failed flagrantly to comply with her covenant to—"keep the exterior of the building, including amongst other things, the roof of the said building . . . in good repair, and the portion of the building intended to be designated as the exterior . . ." As a result of her failure the leased premises have become unfit for use or occupancy. This is established by expert testimony.

Conditions became so intolerable that the plaintiff, amid the adverse circumstances for which he had not bargained, acquired a nearby property and constructed a building thereon in order to continue to conduct his business. Thereafter he moved out of the leased premises, retaining the keys and use of the premises for storage, but continuing to pay rent up to the date of this decree.

In October, 1950, the Miami municipal authorities investigated the conditions in the leased premises in pursuance of the city's slum clearance program. A portion of the report made as a result of such investigation merits quoting at this point—

> 3. The building inspector must be called for preliminary inspection before actual repair may be started. All foundation defects must be repaired; all rotten and termite-eaten wood must be replaced. Siding, window sash, doors and interior wall coverings must be repaired where needed. In all cases where termite action has been determined, the building must be treated by a licensed termite exterminating company.
>
> Note: The above described building is in violation of ordinance no. 3863. Failure to comply with this notice will result in this structure being condemned for demolition.

On February 1, 1951, the city building inspector wrote a letter concerning the leased premises to the landlord's husband, who as above stated was her agent in all matters affecting the lease of the premises. In this letter he pointed out the dangerous condition of the concrete tie beam and plaster which was part of the portion of the building extending over the sidewalk.

The landlord and her husband ignored the demands of the city authorities and as late as May, 1952, for nearly three weeks the front entrance to the demised premises was barricaded by the authorities, and the tenant and all other persons were prohibited from entering the said premises.

The city has condemned this property for use and even to the time of the trial it was unlawful for the property to be used or occupied by the plaintiff or any one else, and the leased premises have been vacated by the plaintiff, except that he has stored a few items therein and has retained a key to the premises by which the electric company has been able to inspect the meters used by the defendant.

It is therefore ordered, adjudged and decreed:

1. That the defendant, Tillie Goldman, has breached her covenant to keep the leased premises at 149 N. W. Fifth Street in Miami in good repair. The effect of such breach, which has been of a recurring nature to the very day of the trial, has been to deprive the plaintiff, Max Bauer, of the use and occupancy of the premises for which the parties bargained;

2. That the lease entered into by and between the plaintiff and defendant on January 6, 1946, is hereby declared cancelled and of no further force and effect, and the plaintiff and defendant are hereby relieved of all obligations thereunder;

3. That the plaintiff is required within 5 days of the date of receipt of a copy of this order to deliver to the defendant all keys in his possession to the defendant and remove all of his personal property located therein, at which time the defendant is hereby required to return the security of $500; otherwise, let execution issue against the defendant for such sum; and

4. The plaintiff is also enjoined from the prosecution of that certain common law suit No. 24890-A in this court and any other suit to recover damages for breach of the covenants of the lease referred to in this decree.